IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

OHIO VALLEY HEALTH SERVICES &
EDUCATION CORPORATION HEALTH PLAN,
OHIO VALLEY HEALTH SERVICES &
EDUCATION CORPORATION DENTAL PLAN,
OHIO VALLEY HEALTH SERVICES &
EDUCATION CORPORATION,
OHIO VALLEY MEDICAL CENTER and
EAST OHIO REGIONAL HOSPITAL,

     Plaintiffs,

v.  Civil Action No. 5:15CV65
 (STAMP)
MICHAEL D. RILEY, West Virginia
Insurance Commissioner,
WEST VIRGINIA OFFICES OF
THE INSURANCE COMMISSIONER
and HEALTH PLAN OF THE
UPPER OHIO VALLEY, INC.,

     Defendants.

**MEMORANDUM OPINION AND ORDER
DENYING DEFENDANTS MICHAEL D. RILEY
AND WEST VIRGINIA OFFICES OF THE
INSURANCE COMMISSIONER'S MOTION TO DISMISS**

I.  Background

Due to the extensive history of litigation between the above-listed parties, a brief discussion of the facts is necessary. Following that discussion, this Court will then turn to defendants Michael D. Riley ("Riley") and West Virginia Offices of the Insurance Commissioner's ("the Insurance Commissioner") motion to dismiss, which currently is at issue.  ECF No. 20.

A. <u>Factual Information</u>

Plaintiff Ohio Valley Health Services & Education Corporation ("OVHS&E") maintains two employee benefit plans, the Ohio Valley Health Services & Education Corporation Health Plan and the Ohio Valley Health Services & Education Corporation Dental Plan (collectively, "OVHS&E Health and Dental Plans"). OVHS&E is the parent corporation of the Ohio Valley Medical Center ("OVMC") and the East Ohio Regional Hospital ("EORH"). OVHS&E Health and Dental Plans entered into an Administrative Services Contract with defendant Health Plan of the Upper Ohio Valley, Inc. ("Upper Ohio Valley Health Plan") to provide third-party administrative services. Those services include paying claims approved and paid for by the OVHS&E Health and Dental Plans. The Upper Ohio Valley Health Plan has served as such an administrator since 1999.

Between January 2005 and April 2013, OVHS&E Health and Dental Plans ran short of funding. Because of the lack of funds, the OVHS&E Health and Dental Plans waited to approve claims for payment by the Upper Ohio Valley Health Plan until sufficient funds became available. Although approval for claims remained pending, Wheeling Hospital (and other service providers) nonetheless entered into Hospital Service Agreements with the Upper Ohio Valley Health Plan. Wheeling Hospital then filed an action under Civil Action 5:10CV67, wherein it sued OVHS&E, OVMC, EORH, and the Upper Ohio Valley Health Plan for attorney's fees and prejudgment interest concerning

2

the pending and delayed payments. This Court ultimately dismissed Wheeling Hospital's claims against OVHS&E, OVMC, and EORH. The remaining defendant in Civil Action 5:10CV67, Upper Ohio Valley Health Plan, entered into arbitration with Wheeling Hospital. Ultimately, Wheeling Hospital and Upper Ohio Valley Health Plan reached a settlement.[1]

The plaintiffs have now filed this civil action, seeking declaratory relief and injunctive relief. In particular, the plaintiffs allege the following three counts. In Count I, the plaintiffs seek a declaratory judgment against the defendants that the Employment Retirement Income Security Act ("ERISA") preempts the West Virginia Prompt Pay Act ("Prompt Pay Act" or "the Act") regarding (a) the requirement to pay claims for medical services within 30 days of submitting a clean claim; (b) imposing 10% prejudgment interest on such claims that remain unpaid; (c) automatically awarding attorney's fees in an action enforcing the Prompt Pay Act or seeking payment for such claims; and (d) that the Prompt Pay Act creates a private cause of action for non-processing or non-payment of claims within the time limits stated in that Act. In Count II, the plaintiffs seek a declaratory judgment against

---

[1] In the above-styled civil action, however, Upper Ohio Valley Health Plan now seeks indemnification from the plaintiffs for paying Wheeling Hospital. More specifically, the Upper Ohio Valley Health Plan seeks indemnification for its settlement concerning attorney's fees and interest it paid in not only Civil Action No. 5:10CV67, but also in a separate state court action (referred to by the parties as the "Wack litigation").

3

defendant Upper Ohio Valley Health Plan that it has no right of indemnification and that the plaintiffs are not liable because ERISA preempts the Prompt Pay Act to the same extent previously stated.  In Count III, the plaintiffs seek a declaratory judgment against defendant Upper Ohio Valley Health Plan that would bar its request for indemnification and state that the plaintiffs are not liable for nine reasons listed in the complaint, including estoppel, waiver, and unclean hands.  In addition to the above listed declaratory judgments, the plaintiffs seek injunctive relief in Counts I and II.  More specifically, in Count, I the plaintiffs seek a permanent injunction enjoining the defendants from enforcing the Prompt Pay Act against the plaintiffs.  In Count II, the plaintiffs seek a permanent injunction against the Upper Ohio Valley Health Plan, which would enjoin it from asserting claims for indemnification for attorney's fees and interest regarding the Upper Ohio Valley Health Plan's settlement with Wheeling Hospital.

Defendant-counterclaimant Upper Ohio Valley Health Plan also filed a counterclaim.  In that counterclaim, Upper Ohio Valley Health Plan asserts the following: (1) Count I, breach of contract against OVHS&E Health and Dental Plans and OVHS&E; (2) Count II, breach of contract and failure to indemnify against OVHS&E Health and Dental Plans and OVHS&E; (3) Count III, implied indemnification (alternatively) against the OVHS&E Health and Dental Plans and OVHS&E; (4) Count IV, unjust enrichment against the OVMC and the

4

EORH; and (5) Count V, unjust enrichment (alternatively) against OVHS&E.

B. <u>Defendants Riley and the Insurance Commissioner's Motion to Dismiss</u>

At issue now is defendants Riley and the Insurance Commissioner's motion to dismiss. ECF No. 20. In that motion, they first argues that the plaintiffs lack standing as to their claim under Count I. Moreover, defendants Riley and the Insurance Commissioner believe that no case or controversy exists between them and the plaintiffs. They also contend that deciding in favor of the plaintiffs will amount to an advisory opinion by this Court. Therefore, defendants Riley and the Insurance Commissioner believe this Court lacks jurisdiction in this case.

The plaintiffs filed a response in opposition. ECF No. 22. In their response, the plaintiffs first point out that defendants Riley and Insurance Commissioner have statutory authority to enforce the Prompt Pay Act. Because this is a preenforcement challenge to the Prompt Pay Act, the plaintiffs believe that the enforcing agency, which are defendants Riley and the Insurance Commissioner, are proper parties. Next, the plaintiffs argue that they do have standing against defendants Riley and the Insurance Commissioner, and that a judgment in favor of the plaintiffs would not amount to an advisory opinion. The plaintiffs also note that because defendants Riley and the Insurance Commissioner failed to

commit to not enforcing the Prompt Pay Act, an injury for standing purposes exists.

Riley and the Insurance Commissioner filed a reply in support. ECF No. 28. In that reply, defendants Riley and the Insurance Commissioner contend that the plaintiffs' alleged injury is only theoretical at this stage. Further, they believe that they cannot enforce the Prompt Pay Act against a plan governed by ERISA, which allegedly is the case here. Defendants Riley and the Insurance Commissioner then mention a conversation with counsel for the plaintiffs, wherein the plaintiffs allegedly offered to dismiss Riley and the Insurance Commissioner, but only if they legally committed (by affidavit) to not enforce the Prompt Pay Act against the plaintiffs. Riley and the Insurance Commissioner rejected that offer. Finally, Riley and the Insurance Commissioner argue that the case or controversy requirement is not satisfied by the mere existence of a statutory provision and a state entity that enforces it.

For the reasons set forth below, Riley and the Insurance Commissioner's motion to dismiss is DENIED.

## II. Applicable Law

### A. Motion to Dismiss For Lack of Subject Matter Jurisdiction

A motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure may challenge jurisdiction either facially or factually. Lawrence v.

6

Dunbar, 919 F.2d 1525, 1528-29 (11th Cir. 1990); see Kerns v. United States, 585 F.3d 187, 192 (4th Cir. 2009) (citing Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982)). "A 'facial attack' on the complaint requires the court merely to look and see if plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion." Menchaca v. Chrysler Credit Corp., 613 F.2d 507, 511 (5th Cir. 1980) (citing Mortensen v. First Federal Savings & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977)). On the other hand, a "factual attack" addresses the "existence of subject matter jurisdiction in fact, irrespective of the pleadings and matters outside the pleadings, such as testimony and affidavits, are considered." Menchaca, 613 F.2d at 511; see also Thornhill Pub. Co., Inc. v. General Tel. & Electronics Corp., 594 F.2d 730, 733 (9th Cir. 1979).

An important distinction between either a "facial" or a "factual" challenge pertains to how a court considers the allegations under the complaint. "On a facial attack, a plaintiff is afforded safeguards similar to those provided in opposing a Rule 12(b)(6) motion--the court must consider the allegations of the complaint to be true." Dunbar, 919 F.2d at 1529 (citing Williamson v. Tucker, 645 F.2d 404, 412 (5th Cir. 1981)). However, because a trial court's jurisdiction is at issue under a "factual" challenge, "'there is substantial authority that the trial court is free to

weigh the evidence and satisfy itself as to the existence of its power to hear the case.'" Dunbar, 919 F.2d at 1539 (quoting Tucker, 645 F.2d at 412-13)(internal citation omitted). Phrased another way, "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." Id.

B. <u>Motion to Dismiss for Failure to State a Claim</u>

In assessing a motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court must accept all well-pled facts contained in the complaint as true. Nemet Chevrolet, Ltd v. Consumeraffairs.com, Inc, 591 F.3d 250, 255 (4th Cir. 2009). However, "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement fail to constitute well-pled facts for Rule 12(b)(6) purposes." Id. (citing Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009)). This Court also declines to consider "unwarranted inferences, unreasonable conclusions, or arguments." Wahi v. Charleston Area Med. Ctr., Inc., 562 F.3d 599, 615 n.26 (4th Cir. 2009).

It has often been said that the purpose of a motion under Rule 12(b)(6) is to test the formal sufficiency of the statement of the claim for relief; it is not a procedure for resolving a contest about the facts or the merits of the case. 5B Charles Alan Wright

& Arthur R. Miller, Federal Practice and Procedure § 1356 (3d ed. 1998). The Rule 12(b)(6) motion also must be distinguished from a motion for summary judgment under Federal Rule of Civil Procedure 56, which goes to the merits of the claim and is designed to test whether there is a genuine issue of material fact. Id. For purposes of the motion to dismiss, the complaint is construed in the light most favorable to the party making the claim and essentially the court's inquiry is directed to whether the allegations constitute a statement of a claim under Federal Rule of Civil Procedure 8(a). Id. § 1357.

A complaint should be dismissed "if it does not allege 'enough facts to state a claim to relief that is plausible on is face.'" Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Facial plausibility is established once the factual content of a complaint 'allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Nemet Chevrolet, 591 F.3d at 256 (quoting Iqbal, 129 S. Ct. at 1949). Detailed factual allegations are not required, but the facts alleged must be sufficient "to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555.

### III. Discussion

Riley and the Insurance Commissioner contend that this Court lacks jurisdiction because the plaintiffs have no standing, and

9

thus no case or controversy exists.  The primary issue then is whether the plaintiffs have standing to assert their claim against Riley and the Insurance Commissioner.[2]

Article III of the Constitution of the United States restricts federal courts "to adjudicating actual 'cases' and 'controversies.'" Allen v. Wright, 468 U.S. 737, 750 (1984).  The doctrines that surround Article III include "not only standing but mootness, ripeness, [and] political question," and create "fundamental limits on federal judicial power in our system of government."  Allen, 468 U.S. at 750 (internal citations and quotations omitted).  "[T]he core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992) (internal citations and quotations omitted).  The question of standing "is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues."  Warth v. Seldin, 422 U.S. 490, 498 (1975).  At its minimum, standing contains three elements.  "First, the plaintiff must have suffered an 'injury in fact,'" meaning "an invasion of a

---

[2]Although Riley and the Insurance Commissioner do not specify whether their Rule 12(b)(1) motion is a facial or factual challenge, the Court interprets their 12(b)(1) motion as a factual challenge because this Court's jurisdiction is at issue.  That means this Court "'is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case.'" Dunbar, 919 F.2d at 1539 (quoting Tucker, 645 F.2d at 412-13)(internal citation omitted).

legally protected interest which is (a) concrete and particularized," and "(b) actual or imminent, not conjectural or hypothetical." Lujan, 504 U.S. at 560 (internal citations and quotations omitted). Second, a causal connection must exist "between the injury and the conduct complained of," meaning it must be fairly traceable "to the challenged action of the defendant." Id. (internal citations and quotations omitted). Third, it must be likely that a "favorable decision" will redress the injury. Id. at 561 (internal citations and quotations omitted). Moreover, the party who invokes federal jurisdiction must establish those three elements. Id.

The issue of standing, however, is slightly complicated in the context of this civil action. Here, the plaintiffs seek a declaratory judgment that the Prompt Pay Act is "invalid and preempted by ERISA with respect to" the OVHS&E Health and Dental Plans. ECF No. 1.[3] That means the plaintiffs assert a preenforcement challenge to the Prompt Pay Act. The "injury" requirement of standing in a "preenforcement . . . challenge to a state statute . . . may be satisfied by establishing a realistic danger of sustaining direct injury as a result of the statute's operation or enforcement." Georgia Latino Alliance for Human Rights v. Governor of Georgia, 691 F.3d 1250, 1257 (11th Cir. 2012)

---

[3]The plaintiffs also seeks a permanent injunction which would enjoin the defendants from enforcing the Prompt Pay Act against OVHS&E Health and Dental Plans.

11

(quoting Socialist Workers Party v. Leahy, 145 F.3d 1240, 1245 (11th Cir. 1998)) (internal citations and quotations omitted). The plaintiff may meet the above standard in one of the following three ways: "(1) [the plaintiff] was threatened with application of the statute; (2) application is likely; or (3) there is a credible threat of application." Georgia Latino Alliance, 691 F.3d at 1257-58 (internal citations and quotations omitted). The point is that, in such a context as the one here, a plaintiff "does not have to await the consummation of threatened injury to obtain preventive relief. If the injury is certainly impending, that is enough." Babbit v. United Farm Workers Nat. Union, 442 U.S. 289, 299 (1979) (quoting Pennsylvania v. West Virginia, 262 U.S. 553, 593 (1923)); see generally North Carolina Right to Life, Inc. v. Bartlett, 168 F.3d 705, 710 (4th Cir. 1999) ("When a plaintiff faces a credible threat of prosecution under a criminal statute he has standing to mount a pre-enforcement challenge to that statute.") (citing Doe v. Bolton, 410 U.S. 179, 188 (1973)); accord New Hampshire Right to Life Political Action Committee v. Gardner, 99 F.3d 8, 13 (1st Cir. 1996) ("The rationale that underlies this rule is straightforward: a credible threat of present or future prosecution itself works an injury that is sufficient to confer standing, even if there is no history of past enforcement.").

With the above law in mind, this Court will now turn to the parties' primary contentions. Those contentions concern the

following: (1) whether Riley and the Insurance Commissioner are proper parties as to Count I, and (2) whether the plaintiffs have standing to sue Riley and the Insurance Commissioner. Those arguments are addressed in the order presented.

A. Riley and the Insurance Commissioner Are Proper Parties

The plaintiffs point out that their claim against Riley and the Insurance Commissioner is "separate and distinct" from their remaining claims. More importantly, the plaintiffs argue that Riley and the Insurance Commissioner enforce the Prompt Pay Act. Because they enforce the Prompt Pay Act, the plaintiffs argue that Riley and the Insurance Commissioner are proper parties.

The law is clear: when a plaintiff asserts a preenforcement challenge to a state statute, "the proper defendants are the government officials charged with administering and enforcing it." Gardner, 99 F.3d at 13; see Mobil Corp. v. Attorney General of Com. of Va., 940 F.2d 73, 75 (4th Cir. 1991) ("Public policy should encourage a person aggrieved by laws he considers unconstitutional to seek a declaratory judgment against the arm of the state entrusted with the state's enforcement power, . . . rather than to deliberately break the law and take his chances in the ensuing suit or prosecution."); Wilson v. Stocker, 819 F.2d 943, 947 (10th Cir. 1987) ("[A] controversy exists not because the state official is himself a source of injury but because the official represents the state whose statute is being challenged as the source of injury.").

In this case, Riley and the Insurance Commissioner are charged with enforcing the Prompt Pay Act. More specifically, the Prompt Pay Act states the following:

> **The commissioner** has jurisdiction to determine if an insurer has violated the standards set forth in subsection (a) of this section by failing to include the requisite provisions in its provider contracts. **The commissioner has jurisdiction to determine** if the insurer has failed to implement the minimum fair business standards set out in subdivisions (1) and (2), subsection (a) of this section in the performance of its provider contracts.

W. Va. Code § 33-45-2(b) (emphasis added). Later sections of the Prompt Pay Act reaffirm that Riley and the Insurance Commissioner enforce the Act. See W. Va. Code § 33-45-5 ("The commissioner is authorized to propose rules for legislative approval in accordance with the provisions of article three . . . to implement the provisions of this article."); id. § 33-45-6 ("Nothing in this article shall limit or modify the commissioner's duties and authority under article two . . . of this chapter."). The point is that Riley and the Insurance Commissioner are clearly responsible for enforcing the Prompt Pay Act. Because "the proper defendants are the government officials charged with administering and enforcing" the Act, defendants Riley and the Insurance Commissioner are proper parties. Gardner, 99 F.3d at 13; see Mobil Corp., 940 F.2d at 75.

14

B.  <u>The Plaintiffs Have Standing to Sue</u>

Defendants Riley and the Insurance Commissioner's primary contention is that the plaintiffs lack standing. In particular, they believe that the plaintiffs fail to assert any injury that is fairly traceable to Riley and the Insurance Commissioner. Because the plaintiffs lack standing, Riley and the Insurance Commissioner believe that no case or controversy exists, and thus, this Court lacks jurisdiction. The plaintiffs point out, however, that sufficient harm exists under their preenforcement challenge to the Prompt Pay Act. They state that defendants Riley and the Insurance Commissioner have not agreed to refrain from enforcing the Prompt Pay Act. Without an agreement to not enforce the Act, the plaintiffs argue that they may face penalties if the defendants later enforce the Act against them.

As stated earlier, standing requires that the plaintiffs show the following: (1) injury in fact, (2) a causal connection between that injury and challenged conduct, and (3) redressability by a favorable decision. <u>Lujan</u>, 504 U.S. at 560. Assuming the plaintiffs have alleged a judicially cognizable injury, the remaining elements of standing are satisfied. Such an injury would be caused by the threat of defendants Riley and the Insurance Commissioner enforcing the Act. Therefore, the causal connection has been shown. Further, both a declaratory judgment finding that ERISA preempts the Prompt Pay Act and a permanent injunction

15

enjoining the enforcement of the Act against the plaintiffs would redress their injury.

With the second and third elements of standing satisfied, the remaining issue is whether the plaintiffs have shown a judicially cognizable injury. As stated earlier, the plaintiffs assert a preenforcement challenge to the Prompt Pay Act. In such a case, the injury element "may be satisfied by establishing a realistic danger of sustaining direct injury as a result of the statute's operation or enforcement." Georgia Latino Alliance, 691 F.3d at 1257 (quoting Leahy, 145 F.3d at 1245) (internal citations and quotations omitted). The plaintiff may meet the above standard in one of the following three ways: "(1) [the plaintiff] was threatened with application of the statute; (2) application is likely; or (3) there is a credible threat of application." Georgia Latino Alliance, 691 F.3d at 1257-58 (internal citations and quotations omitted); see generally Bartlett, 168 F.3d at 710 ("When a plaintiff faces a credible threat of prosecution under a criminal statute he has standing to mount a pre-enforcement challenge to that statute.") (citing Bolton, 410 U.S. at 188); accord Gardner, 99 F.3d at 13 ("The rationale that underlies this rule is straightforward: a credible threat of present or future prosecution itself works an injury that is sufficient to confer standing, even if there is no history of past enforcement.").

In the plaintiffs' case, a credible threat exists that Riley and the Insurance Commissioner may enforce the Prompt Pay Act. Enforcement of the Act could, for example, result in adding 10% interest to claims not processed within the statutory time period. See W. Va. Code §§ 33-45-2(a)(1);-2(a)(4). More importantly, Riley and the Insurance Commissioner have "not disavowed any intention" of enforcing the Prompt Pay Act. Babbit, 442 U.S. at 302. Counsel for the plaintiffs, Riley and the Insurance Commissioner discussed the potential enforcement of the Act, and defendants Riley and the Insurance Commissioner declined to agree that it "does not interpret the West Virginia Prompt Pay Act [as applying] to ERISA covered plans such as the Plaintiffs." ECF No. 22. That, along with the clearly adverse positions of the parties, demonstrates a credible threat of application of the Act against the plaintiffs. See, e.g., Mobil, 940 F.2d at 76 ("The Attorney General has not, however, disclaimed any intention of exercising her enforcement authority."). Therefore, the plaintiffs have sufficiently shown a cognizable injury as to standing. Thus, they have standing to sue defendants Riley and the Insurance Commissioner, and accordingly, the motion to dismiss (ECF No. 20) under 12(b)(1) and 12(b)(6) is DENIED.[4]

---

[4]It should be noted that Riley and the Insurance Commissioner asserted that the plaintiffs' request for a declaratory judgment and injunctive relief would amount to an advisory opinion. A case does not call for an advisory opinion if (1) the case pits "adverse parties whose contentions are submitted to the court for

IV. Conclusion

For the reasons set forth above, defendants Michael D. Riley and West Virginia Offices of the Insurance Commissioner's motion to dismiss (ECF No. 20) is DENIED.

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit a copy of this memorandum opinion and order to counsel of record herein.

DATED:     December 10, 2015

                                        /s/ Frederick P. Stamp, Jr.
                                        FREDERICK P. STAMP, JR.
                                        UNITED STATES DISTRICT JUDGE

---

adjudication" against each other, and (2) "a decision in the case must be likely to have some effect on the dispute." United States v. McClure, 241 F. App'x 105, 108 (4th Cir. 2007) (internal citations and quotations omitted).  Here, both criteria are satisfied, and thus their argument is without merit.